IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM GREEN,<br>　　　　　Petitioner,<br>　v.<br>D.K. SISTO, Warden,<br>　　　　　Respondent. | Case No. CIV S-07-2741 VAP (HC)<br><br>**[Petition filed on December 19, 2007]**<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS FILED BY A STATE PRISONER** |

**I.　BACKGROUND**

　　Petitioner William Green is a state prisoner proceeding in pro se in a habeas corpus action filed pursuant to 28 U.S.C. § 2254.  The petition was filed on December 19, 2007, Respondent filed an Answer on August 29, 2008, and Petitioner filed a Traverse on December 16, 2008.  On January 5, 2009, the action was transferred to this Court pursuant to an Order of Designation of Judge to Serve in Another District within the Ninth Circuit.

　　For the reasons stated below, the Court DENIES the Petition.

**A.   Statement of Facts**

On November 2, 2004, a jury in the Superior Court of California, Sacramento County, found Petitioner guilty of two counts of second degree robbery, in violation of California Penal Code § 211.[1]  The convictions arose out of two separate incidents on Monday mornings in December 2003.[2]

   **1.   The December 8 Robbery**

Chris Thomas was the assistant manager of a Taco Bell restaurant in Sacramento.  (Ct. of App. Op. at 2.)  Every day, he would go to a local Bank of America to deposit the restaurant's previous day's receipts.  (Id.)  On December 8, 2003, he arrived at the bank in his van between 10:00 and 11:00 a.m., and an African-American man

---

[1] The trial court found that Petitioner had served four prior prison terms, and considered those terms as "aggravating circumstances justifying the imposition of an aggravated sentence" on one of the robbery counts. (Ct. of App. Op. at 13.)  The trial court also imposed an additional year of imprisonment for each of the four prior prison terms, but stayed this enhancement.  (Id.)  The Court of Appeal found this to be an improper dual use of the prior prison terms, and ordered the additional four one-year enhancements stricken.  (Id. at 14.)  The prior terms are not relevant to either of the claims in the Petition.

[2] The factual summaries of these events are based on the July 7, 2006 opinion of the California Court of Appeal, Third Appellate District.  (Pet. Ex. 2; Lodged Doc. 4 ("Ct. of App. Op.").)  That court's factual determinations are "presumed to be correct" and Petitioner may only rebut this "presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2253(e)(1).  Petitioner has not identified any such evidence.

wearing a black stocking cap approached his vehicle. (Id.)  Thomas initially waved him away, but the man then tapped on the van window with a gun, and said "I know you have the money from Taco Bell."  (Id.)  Thomas handed him the money, and the man ran around the side of the bank, and out of Thomas's view.  (Id.)

A witness in the bank parking lot, Jeremiah Schotl, then saw an African-American man walk around the side of the bank, and get in the passenger seat of a parked gray Toyota.  (Id.)  Another African-American man was waiting in the vehicle, and promptly drove away.  (Id.)  Police later recovered a Toyota sold by Petitioner at a salvage yard, which Schotl identified as looking "exactly like" the getaway car.  (Id. at 2-3.)

**2.   The December 22 Robbery**

Mohammed Awad was the assistant manager of a Wienerschnitzel restaurant in Rancho Cordova.  (Ct. of App. Op. at 3.)  Every weekday, between 9:00 and 10:00 a.m., Awad would drive to a nearby U.S. Bank and deposit the previous day or days' receipts.  (Id.)  On December 22, 2003, Awad drove to the bank at about 9:30 a.m., parked his car, and started towards the bank.  (Id.)  He soon was approached by an African-American man, dressed in black and wearing a black mask, who Awad saw get out of a dark red American car.  (Id.)  The man pulled a

black gun from his jacket and said to Awad, "Don't move." (Id.) Awad threw the money he had intended to deposit to the ground. (Id.) The man picked it up, ran toward the red car, which was now moving slowly through the parking lot, got into the passenger seat, and rode off. (Id.)

At around the same time, a witness, Kerry Freeman, saw a man dressed in black running toward a red Cadillac car with no license plates in a remote part of the parking lot. (Id.) She saw the man get into the passenger seat of the car, and also saw the driver, who she identified as an African-American man in his mid or late 20s. (Id. at 3-4.) Freeman followed the car as it exited the lot and called 911. (Id. at 4.)

When police officers responded, Freeman directed them to the car, which was parked outside an apartment complex. (Id.) They found a black stocking mask on the ground outside the car's passenger door. (Id.) Later, they found packaging for a toy pistol inside the car. (Id.)

The officers traced the vehicle as belonging to Eric Hayes, Petitioner's half-brother, and were directed to Hayes's apartment. (Id.) There, they found Petitioner and Hayes, a stack of currency on the bathroom floor, and a toilet bowl full of wet money. (Id.)

1    Parked next to the Cadillac was a Ford Bronco, also
2 owned by Hayes.  (Id.)  In the Bronco, the officers found
3 a black leather jacket, a pair of black leather gloves,
4 and a black toy pistol.  (Id.)

6    Awad later identified the red Cadillac as the car
7 used in the robbery, and Hayes as the robber.  (Id.) He
8 reported having seen Hayes "outside the restaurant almost
9 every day before the robbery."  (Id.)   Freeman also
10 repeated her identification of the car, but could not say
11 whether it was Hayes or Petitioner who was the driver of
12 the car. (Id.)

14    **3.   Hayes's Testimony at Trial**
15    Hayes confessed to the December 22 robbery at the
16 scene of his arrest, pled guilty to both robberies and
17 testified against Petitioner at trial.  (Ct. of Appeal
18 Op. at 5, 6.)  At Petitioner's trial, Hayes admitted to
19 being the individual who took money from both Thomas and
20 Awad at gunpoint, and testified that Petitioner drove the
21 getaway cars on both occasions.  (Id. at 5)   Hayes
22 testified that Petitioner had originated the idea of
23 staking out fast food restaurants and, on Monday
24 mornings, following the employees responsible for taking
25 the weekend's receipts to the bank and robbing them when
26 they went to make the deposit.  (Id.)   Hayes explained
27 Petitioner wanted Hayes to be the actual "gunman," since,

should they be caught, Petitioner faced harsher penalties due to his prior criminal convictions. (Id.)

Hayes also testified that he and Petitioner purchased the air pistols brandished in the robberies. (Id.) He stated that Petitioner had owned the Toyota used in the December 8 robbery, but later wrecked it and sold it for salvage, and used the proceeds to purchase the Cadillac used in the December 22 robbery. (Id.) This was confirmed by the police's own investigation. (Id. at 3.)

According to Hayes, after the December 22 robbery, Petitioner told Hayes to hide his jacket, gun, and gloves in the Ford Bronco parked next to the Cadillac, and then the men entered Hayes's apartment. (Id. at 5.) At that point, Petitioner began counting the money taken from Awad. (Id.) The men heard dogs barking, and, thinking they were police dogs, Hayes unsuccessfully attempted to flush the money down the toilet. (Id. at 5-6.)

**B.  Procedural History**

On December 3, 2004, Petitioner was sentenced to 17 years imprisonment for his role in the two crimes. (Pet. Ex. 1.) Represented by counsel, he filed an appeal of his sentence and conviction in the California Court of Appeal, Third Appellate District, on November 21, 2005. (Lodged Doc. 1.) The Court of Appeal modified and

1  affirmed the judgment on July 7, 2006.  (Ct. of App. Op.)
2  On August 16, 2006, via counsel, Petitioner filed a
3  petition for review with the California Supreme Court,
4  which was summarily denied on September 20, 2006. (Lodged
5  Docs. 5-6.)

**C.   Petitioner's Claims**

Petitioner filed this petition on December 19, 2007, and asserts the following grounds for federal habeas corpus relief:

1.   The trial court's failure to sever the counts against him was a violation of his rights under the Sixth and Fourteenth Amendments to the Constitution; and

2.   There was insufficient evidence to corroborate Hayes's testimony as to Petitioner's participation in the December 8, 2003 robbery.

## II. LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the Court's review of this Petition, as the Petition was filed after AEDPA's effective date.  Under 28 U.S.C. § 2254(a), "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

When considering a properly exhausted claim under AEDPA, a federal court must defer to a state court's holding unless it "'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or if the state court decision 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Smith v. Curry, 580 F.3d 1071, 1079 (9th Cir. 2009), quoting 28 U.S.C. §§ 2254(d)(1)-(2).

"Clearly established Federal law" is defined as "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Curry, quoting Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). "[I]t is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." Knowles v. Mirzayance, --- U.S. ---, 129 S. Ct. 1411, 1419 (2009). However, "the Supreme Court need not have addressed an identical fact pattern to qualify as clearly established law, as 'even a general standard may be applied in an unreasonable manner.'" Jones v. Ryan, 583 F.3d 626, 635 (9th Cir. 2009), quoting Panetti v. Quarterman, 551 U.S. 930, 953 (2007).

## III.   DISCUSSION

**A.   Petitioner's First Claim**

Petitioner's first claim is that the trial court violated his constitutional right to a fair trial when it denied his motion to "sever trial of count one from that of count two, principally on the basis that a weak count has been joined with a strong count."  (Pet. at. 5.)  Petitioner concedes that "there was significant evidence" relating to his involvement in the December 22, 2004 robbery, but suggests that this evidence impermissibly influenced the jury's findings as to his involvement in the earlier robbery.  (Id.)

The failure to sever trial of multiple counts in an indictment only violates a defendant's federal cosntitutional rights if it "actually rendered petitioner's state trial fundamentally unfair and hence, violative of due process," as shown by "a substantial and injurious effect or influence in determining the jury's verdict."  Sandoval v. Calderon, 241 F.3d 765, 772 (9th Cir. 2000) (citations omitted).  See also United States v. Lane, 474 U.S. 438, 446 n. 8 (1986) ("misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial").  "In evaluating prejudice, the Ninth Circuit focuses particularly on cross-admissibility of evidence and the

danger of 'spillover' from one charge to another, especially where one charge or set of charges is weaker than another." Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004). "[C]ross-admissibility dispels the prejudicial impact of joining all counts in the same trial." Sandoval, 241 F.3d at 773.

The Court of Appeal concluded the motion to sever was properly denied, as Petitioner failed to make "a clear showing of potential prejudice." (Ct. of App. Op. at 7, applying People v. Osband, 13 Cal. 4th 622, 666 (1996).) The Court of Appeal concurred with the trial court and found no prejudice since the evidence of the two crimes would have been cross-admissible as facts tending to establish a "common design or plan." (Ct. of App. Op. at 9-10, citing Cal. Evid. Code § 1101.) In finding that the two robberies "had sufficient common features to establish cross-admissibility based on common scheme or plan," the Court of Appeal noted that both crimes occurred on Monday mornings, only two weeks apart; that both victims were fast food employees making deposits of weekend receipts; and both crimes involved a gunman approaching on foot while a second person waited in a getaway car "far enough away from the victim that he could not be seen." (Id. at 10.)

Generally, the admissibility of evidence is a state law question, and state court interpretations of state law are not reviewable on habeas by federal courts. Estelle v. McGuire, 502 U.S. 62, 67 (1991). While the admissibility of some evidence could raise constitutional due process questions, the Ninth Circuit has held that the admission of propensity evidence does not entitle a petitioner to habeas relief because there is no clearly established Supreme Court precedent holding that the admission of such evidence is a violation of due process. Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008); Alberni v. McDaniel, 458 F.3d 860, 863-67 (9th Cir. 2006), cert. denied, 549 U.S. 1287 (2007). Accordingly, this Court is bound by the California state court's determination of cross-admissibility.

In light of the cross-admissibility of the evidence, the Court of Appeal's determination that the failure to sever did not cause undue prejudice was not objectively unreasonable.

**B.   Petitioner's Second Claim**

Petitioner's second claim is that there was insufficient "evidence to corroborate Hayes' accomplice testimony" regarding his participation in the December 8 robbery. Although accomplice testimony must be corroborated under California law (see Cal. Penal Code §

1111), no such requirement exists under the United States Constitution.  See United States v. Augenblick, 393 U.S. 348, 352-53 (1969); United States v. Lopez, 803 F.2d 969, 973 (9th Cir. 1986); Bacon v. Clark, No. CV 09-4088-CAS (RNB), 2009 WL 3459135, at *8 (C.D. Cal. Oct. 27, 2009). Rather, "the uncorroborated testimony of an accomplice is sufficient to sustain a conviction unless it is incredible or insubstantial on its face."  United States v. Necoechea, 986 F.2d 1273, 1282 (9th Cir. 1993).

There is no indication that Hayes' testimony was either incredible or insubstantial, and, as such, Petitioner's second claim fails to present a cognizable federal question.  See Taffolla v. Hedgpeth, No. SACV 07-916-DOC (OP), 2009 WL 5064788, at *14 (C.D. Cal. Dec. 22, 2009); George v. Almager, --- F. Supp. 2d ---, Civil No. 07cv2215 J(POR), 2009 WL 3061983, at *13 (S.D. Cal. Sept. 24, 2009).

## IV.   CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus is DENIED.

Dated: January 21, 2010

VIRGINIA A. PHILLIPS
United States District Judge